*Tagged Opinion*

***DO NOT PUBLISH***



**ORDERED in the Southern District of Florida on November 25, 2019.**

_____

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

In re:                                                    Case No. 19-11266-LMI

Denis Ernesto Carballo,                        Chapter 13

      Debtor.

_____/

**ORDER DENYING MOTION TO DISMISS AND**
**DIRECTING DEBTOR TO AMEND PLAN**

This matter came before the Court for trial on September 4, 2019, on the

*Motion to Dismiss* (ECF #44) filed by the Chapter 13 Trustee, the *Objection to*

*Confirmation* (ECF #46) filed by the Chapter 13 Trustee, and the *Debtor's*

*Response to Trustee's Motion to Dismiss* (ECF #50) (the "Response"). The Court

has considered the Motion to Dismiss, the Objection to Confirmation, the

1

Response, the evidence presented at trial, and the arguments of counsel. Based on the foregoing, the Motion to Dismiss is DENIED but the Debtor must amend his bankruptcy plan.

### Background Facts

The Debtor, Denis Ernesto Carballo, filed this chapter 13 bankruptcy case on January 29, 2019 (the "Petition Date"). On his *Bankruptcy Petition and Initial Schedule A/B* (ECF #1), the Debtor listed his residence at, and ownership interest in, 19511 S.W. 214th Street, Miami, Florida 33187 (the "Grandparents' Property"). The Debtor filed his *Initial Schedules* (ECF #9) on February 11, 2019, which disclosed on Schedule C an additional parcel of real property located at 16049 S.W. 103rd Lane, Miami, Florida 33196 (the "Homestead Property") which the Debtor claimed as exempt. The Debtor scheduled the Grandparents' Property as exempt on Schedule C because the Debtor claimed he held only bare legal title to that real property. The Debtor also listed on Schedule C a joint bank account ending in **2800 (the "Bank Account") at Space Coast Credit Union ("SCCU") that the Debtor owned with his grandmother, Frances Gutierrez (the "Grandmother"). The Debtor claimed the Bank Account as exempt because, the Debtor claimed, he held only bare legal title.

The following day, the Debtor filed an *Amended Schedule A/B* (ECF #16) which added the Homestead Property and the Bank Account to Schedule A/B[1] and disclosed other assets not previously scheduled at all. On March 6, 2019, the Debtor filed an *Amended Petition* (ECF #20) that identified the Homestead

---

[1] The Homestead Property and the Bank Account were originally only listed on Schedule C.

Property, rather than the Grandparents' Property, as the Debtor's residence.

The Debtor filed an *Amended Statement of Financial Affairs* (ECF #47) on June 4, 2019, which disclosed that the Debtor previously held an interest in real property located at 15790 S.W. 84th Terrace, Miami, Florida 33193 (the "Mother's Former Property") that the Debtor's mother, Guisele Fernandez (the "Mother"), sold prepetition. The Amended Statement of Financial Affairs stated that the Debtor held only bare legal title to the Mother's Former Property and that all proceeds of the sale of that property went to the Mother.

The Debtor filed an *Amended Chapter 13 Plan* (ECF #39) (the "Chapter 13 Plan") that proposes to pay unsecured creditors $12,460.00 over the life of the plan. The Trustee disputes the Debtor's claim of bare legal title in the Mother's Former Property, the Grandparents' Property, and the Bank Account. If the Trustee is correct - that the Debtor in fact made an avoidable transfer of an equitable interest in the Mother's Former Property and owns an equitable interest in the Grandparents' Property and the Bank Account - then the Debtor would be required to account for those assets by making a larger distribution to his unsecured creditors than what is proposed in the Chapter 13 Plan.

### Findings Of Fact And Conclusions Of Law[2]

The Mother purchased the Mother's Former Property on April 10, 2001; both the Mother and the Debtor are listed on the deed as the owners. A mortgage

---

[2] These are the Court's findings of fact and conclusions of law under Fed.R.Civ.P. 52 made applicable to this contested matter pursuant to Fed.R.Bankr.P. 7052 and Fed.R.Bankr.P. 9014. Some of these facts were stipulated to by the Trustee and the Debtor in the *Joint Pretrial Stipulation (*ECF #73).

3

was also recorded at the time of purchase, with both the Debtor and the Mother listed as the mortgagors. On December 17, 2018, approximately 6 weeks prior to the Petition Date, the Mother sold the Mother's Former Property; the deed from that sale was recorded on January 7, 2019.

On March 16, 2013, the Debtor and his grandparents - Edmundo Gutierrez and Frances Gutierrez, took title to the Grandparents' Property.  At the same time, the Debtor and his grandparents executed a mortgage on the Grandparents' Property securing a loan in the amount of $150,000.00.  Later in March 2013, the Debtor and his Grandmother opened the Bank Account.

On October 7, 2015, the Debtor and his wife, Liannette Carballo purchased the Homestead Property.  The Homestead Property is encumbered by a mortgage in the amount of $304,385.00.

The Debtor argued that he only possessed or possesses a bare legal title interest in the Mother's Former Property, the Grandparents' Property, and the Bank Account. Based on the facts and the law, the Court finds that the Debtor's interest in the Mother's Former Property and the Grandparents' Property is held by bare legal title, but that the Bank Account is an asset of the Debtor's bankruptcy estate.

### Standard for Imposing a Constructive Trust and Bare Legal Title

A person in whose name title to property is held is presumed to be the owner of the property. *In re DiStefano*, 442 B.R. 146, 148 (Bankr.S.D.Fla.2010); *In re Kirk*, 381 B.R. 800, 802 (Bankr.M.D.Fla.2007) (quoting *Nash Miami Motors, Inc. v. Bandel,* 47 So.2d 701, 703 (Fla. 1950)); *see also Cannova v. Carran,* 92

So.2d 614, 619 (Fla. 1957). However, that presumption can be rebutted.  "[A]n interest that is limited in the hands of the debtor is equally limited in the hands of the estate, and therefore, where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property." *In re Moodie*, 362 B.R. 554 (Bankr.S.D.Fla. 2007)(citing *Kapila v. Atl. Mortg. & Inv. Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir.1999)). Bare legal title is usually established by showing that the debtor holds the property in trust for the actual owner.  In the absence of an actual trust, the debtor must establish the property is held in a resulting trust.

Under Florida law, it is the Debtor's burden to prove the existence of a resulting trust by clear and convincing evidence. *Bird v. Stein,* 258 F.2d 168, 177 (5th Cir. 1958)("Where it is necessary to prove [by parole evidence] the existence of a [resulting] trust, 'the evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the beneficiary beyond a reasonable doubt.'"); *In re Daugherty*, 261 BR 735 (Bankr.M.D.Fla. 2000).

A resulting trust, unlike an express trust, is an implied trust, that is, one created to remedy a situation.

> A resulting trust is simply a status that automatically arises by operation of law out of certain circumstances. . . . In the creation of a resulting trust it is essential that the parties actually intend to create the trust relationship but fail to execute documents or establish adequate evidence of the intent.

*Wadlington v. Edwards,* 92 So. 2d 629, 631 (Fla. 1957).  "Where, for any reason, the legal title to property is in one person under such circumstances as to make

it inequitable for him to have the beneficial interest, equity will imply a trust in favor of the person entitled to the beneficial interest." *Frank v. Eeles*, 13 So. 2d 216, 218(Fla. 1943) (citations omitted). The purpose of the resulting trust is to determine, through equity, who should be the real owner of the property in question. *Howell v. Fiore*, 210 So. 2d 253 (Fla. 2d DCA 1968).

The focus of whether there is a resulting trust is the intention of the parties to create a trust at the time the property is conveyed. *Smith v. Smith*, 196 S0. 409, 410 (Fla. 1940). That intention can be inferred by the circumstances surrounding the transfer. *Id.*  One significant indicator is whether the person who is the presumptive beneficiary of the resulting trust supplied the purchase price for the property at issue. *Frank v. Eeles,* 13 So. 2d 216.  However, if the person in whose name the property is placed is a spouse or a child, that presumption may be rebutted, and a gift presumed. *Bird v. Stein,* 258 F.2d 168; *Lipford v. State,* 53 So. 2d 312 (Fla. 1951); *Frank v. Eeles,* 13 So. 2d 216; *Smith v. Smith*, 196 So. 409.

### The Debtor's Ownership interest in the Disputed Assets

The Trustee successfully met her initial burden of proving the Debtor's ownership interests in the Mother's Former Property, the Grandparents' Property, and Bank Account because the Debtor is listed as an owner of record as to each. *See In re DiStefano*, 442 B.R. at 148. The burden then shifted to the Debtor to prove that he is not a beneficial owner of the properties.

### a)  The Mother's Former Property

The Debtor testified that he lived with his Mother in the Mother's Former

6

Property until he moved out to live with his, now, wife, and that he never considered himself an owner of the home. In fact, the Debtor testified, he forgot he was named on the deed to the Mother's Former Property until she asked him to sign papers relating to the sale in December 2018.[3]

The Mother testified that at the time she purchased her home, she was employed as a sales representative and the Debtor, who was approximately 19 years old at the time, did not provide any of the funds for the down payment. The Mother testified that she chose to add her son to the deed when she purchased her home. The Mother also testified that during the time that the Debtor resided at the Mother's Former Property, the Debtor never contributed to the household expenses, improved the property, or financially supported his Mother. The Debtor did not act like an owner – he never controlled documents relating to the Mother's Former Property; he did not pay for or hold out the property as his own.

The Debtor successfully met his burden to show he held only bare legal title to the Mother's Former Property.  In *In re Moodie*, 362 B.R. 554 the debtor's mother purchased real estate and placed the debtor's name on the deed along with the mother's as joint tenants with rights of survivorship.  The debtor successfully proved through testimony that (a) she did not believe herself to be

---

[3] The Debtor testified that he signed papers outside his house on the way to work and didn't realize or didn't remember that those papers related to the sale of the Mother's Former Property. However, the Debtor's signatures on each of those papers were notarized by a notary that the Debtor testified he did not know.  Accordingly, the Court finds this testimony not believable. Although the Debtor's lack of candor has no bearing on this particular issue since the Mother corroborated the Debtor's testimony with respect to her former home and the Grandparents' Property, the Debtor's lack of candor is relevant to the Court's findings with respect to the Bank Account.

the owner of the property, (b) she executed any documents that her mother gave her with respect to that property, (c) she did not receive proceeds from the mortgage on the property, (d) the mother titled the property for estate planning purposes, and (e) only the mother paid for the property.  *Id.* at 560. As in the *Moodie* case, the Debtor here has presented sufficient evidence to rebut the presumption that he was an equitable owner of the Mother's Former Property.

### b) <u>The Grandparents' Property</u>

The Debtor and his Mother testified that the down payment for the Grandparents' Property came from the sale of the grandparents' former home in Texas.  The Debtor testified that he was only on title because his credit was needed to assist his grandparents in getting a loan to purchase the property;  the Debtor filled out the loan application as the sole applicant.  The loan application listed the Debtor's employment and income and in the application the Debtor represented that he intended to occupy the property as his primary residence.  However, the Debtor testified he has never paid any expenses associated with the ownership of the Grandparents' Property and that he has never lived at the Grandparents' Property, never listed it as an asset of his, or held himself out as an owner of the Grandparents' Property except when he obtained the loan for the purchase of the property.

The Trustee argues that by lending his credit to the Grandmother for the purchase of the Grandparents' Property, the Debtor financially contributed in a manner sufficient to prove that the Debtor is an equitable owner of the Grandparents' Property.  The Trustee relies on *In re Fletcher*, 2012 WL 2062394,

at *4 (Bankr.S.D.Fla.2012) in support of her argument that the Debtor may hold more than bare legal title even if he does not make the payments on the property, where the Debtor contributes in other ways.

The Court finds the *Fletcher* case to be distinguishable. The *Fletcher* case involved a vehicle titled in the name of a debtor and her mother, but purchased solely by the debtor's mother, who lived with the debtor. The debtor not only paid for the insurance of the vehicle, but also contributed regular income to her mother, as well as paid for all of the household expenses of her mother and disabled sister. The Court in *Fletcher* found that the debtor's mother used the financial support from the debtor to maintain and operate the vehicle.  In contrast to the *Fletcher* case, the Debtor neither contributed any financial support for the maintenance of the Grandparents' Property nor did he provide general financial support to the Grandmother for living expenses.  While the Court recognizes that lenders rely upon loan applications to extend credit, lending one's credit to purchase a property is a far cry from supporting the ongoing expenses of a property or a household sufficient to establish equitable ownership.

The Court finds that the Debtor allowed his grandparents to utilize his credit to purchase the Grandparents' Property, but that act, without more, did not create an equitable interest in the Grandparents' Property.

### c) **The Bank Account**

The Debtor testified at trial that he did not own the Bank Account, that the Bank Account is solely used to receive the Grandmother's social security

deposits, and that the Debtor never withdrew funds from the Bank Account. The Debtor testified that SCCU, the holder of the mortgage on the Grandparents' Property, required its mortgage clients to have accounts at SCCU. This requirement, according to the Debtor, necessitated his opening the Bank Account with the Grandmother. The Debtor stated that he never deposited funds into the Bank Account and that he never used the Bank Account to pay any of his personal expenses. However, the Debtor did receive the monthly bank statements and had the ability to deposit and withdraw funds, although the Debtor testified he did not do so.

The Court finds the Debtor did not adequately meet his burden of proof to overcome the Trustee's case. Despite the Debtor's testimony to the contrary, the Court finds that the Debtor had at least shared control over the Bank Account because he received the monthly statements and he used the Bank Account at least four times to pay his personal obligations. The Debtor testified that he owned a boat (the "Boat") prepetition. The Debtor took out a loan from SCCU in the amount of $32,162.21 on December 22, 2016, to purchase the Boat. The Debtor testified that he made the monthly installment payments of $424.78 for the Boat loan. The bank statements show that at least four payments for the Boat came from the Bank Account during June 2018, July 2018, and September 2018. SCCU repossessed the Boat after the Debtor failed to make the loan payments. While the Debtor claims he did not realize this money was withdrawn, the Court does not find this testimony reliable, and finds it is more likely that

the funds were withdrawn with the Debtor's knowledge.[4]

The Debtor is a named joint owner of the Bank Account.  The Debtor, as a joint owner, receives the monthly statements for the Bank Account. At least four Boat payments came from the Bank Account on the Debtor's behalf. The Court finds that these facts are indicia of ownership and control.  The Court further finds that the Debtor's testimony and evidence presented at trial were insufficient to rebut the presumption that he held an equitable ownership interest in the Bank Account.  Therefore, the Court finds that the Bank Account is property of the bankruptcy estate.

### ORDER

For the foregoing reasons, it is ordered as follows:

1.    The Debtor held and holds bare legal title to the Mother's Former Property and to the Grandparents' Property.  Neither parcel of real property is property of the bankruptcy estate.

2.    The Debtor is an owner of the Bank Account.  The Debtor's interest in the Bank Account, as an equal co-owner, is property of the estate.

3.    The Debtor shall have 14 days from the date of this order to file an amended plan consistent with this opinion.

### ###

Copies provided to:
Laila Gonzalez, Esq., Debtor's Counsel
Amy Carrington, Esq., Trustee's Counsel

*Attorney Gonzalez shall serve a copy of this order on all interested parties and file a certificate of service.*

---

[4] The Debtor's *Amended Statement of Financial Affairs* (ECF #47) states that SCCU repossessed the Boat in September 2018. It is unclear if the September 2018 payment taken out of the Bank Account was made before or after the date of the repossession.

11